# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| JIMMIE GLYN SHARPLIN AND MARGARET SHARPLIN | * | CIVIL ACTION NO. 05-0479 |
| VERSUS | * | MAGISTRATE JUDGE HILL |
| T.B. RENTAL SERVICES, INC. | * | BY CONSENT OF THE PARTIES |

## MEMORANDUM RULING

Pending before the Court is a Motion for Summary Judgment filed by defendants, T.B. Rental Services, Inc. ("T.B. Rental") and Nautilus Insurance Company ("Nautilus"), on June 13, 2006. (rec. doc. 39). Plaintiffs, Jimmie Glyn Sharplin and Margaret Sharplin ("Sharplin"), have filed opposition. For the reasons set forth below, the motion is **GRANTED**.

## Background

Sharplin brought this negligence action for injuries sustained when he was allegedly bitten by a spider while sleeping in trailer leased by T.B. Rental to his employer, Helmerich & Payne International Drilling Company ("H & P").

On March 29, 2004, Sharplin was working as a floor hand for H & P on Rig 163 in Gueydan, Louisiana. While at the rig site, Sharplin and the other crew members slept in trailers which were situated near the land-based rig. H & P leased

these trailers from the defendant T.B. Rental.

The trailer in which Sharplin slept was delivered by T.B. Rental to H & P on or about June 9, 2003. [ rec. doc. 39, Ex. B ¶ 3]. At the time of delivery, the trailer was not infested with spiders or other insects. [rec. doc. 39, Ex. B ¶ 4]. Once the trailer was delivered, H & P's rig crew was responsible for keeping the trailer clean. [rec. doc. 48, Ex. B ¶ 7].

On March 29, 2004, Sharplin awoke in the trailer and found what appeared to be a "zit" on his left leg. He worked for a few more days, then returned home to Pensacola, Florida. On April 14, 2004, he saw his family physician, Dr. H. David Brannon, for an abscess which had formed on his left leg. Sharplin told Dr. Brannon that the abscess started with a spider bite, the "zit" which he found on March 29. Dr. Brannon's diagnosis was a staphylococcus aureus infection of the left lateral leg.

Subsequently, Sharplin was treated by Dr. Bradford Pyle for the abscess, which Dr. Pyle diagnosed as necrotizing fasciitis. At his deposition, Dr. Pyle testified that the abscess was not caused by a spider bite. However, he acknowledged that a spider or any other insect bite could be a potential port of entry for a methicillin resistant staph after Sharplin had touched a contaminated surface.

On March 16, 2005, Sharplin filed this action asserting that defendants were negligent and were liable to him for the injuries resulting from the alleged spider bite.

On June 13, 2006, defendants filed the instant motion for summary judgment, asserting that: (1) there is insufficient evidence to prove that Sharplin was bitten by a spider while in the crew trailer; (2) there is no evidence that the trailer was infested with spiders or other insects, and (3) the trailer owned by T.B. Rental was leased to H & P and was in H & P's custody at the time of the alleged bite. Additionally, the defendant argues that it cannot be held to have been negligent, because the defendant did not breach any duty which it owed to the plaintiff.

## **Summary Judgment Standard**

A motion for summary judgment shall be granted if the pleadings, depositions, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). When the burden at trial rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case. *International Association of Machinists and Aerospace Workers, AFL-CIO v. Compania Mexicana de Aviacion, S.A.*, 199 F.3d 796, 798 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Courts consider the evidence in the light most favorable to the nonmovant, yet the nonmovant may not rely on mere allegations in the pleadings; rather, the

nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Id.* (citing *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2458.))

## **Analysis**

1. Negligence

In the complaint, plaintiffs alleged that T.B. Rental was negligent in renting trailers to H & P which were infested with spiders, in failing to properly inspect the trailers before leasing them to H & P, and in failing to fumigate and otherwise insure the cleanliness of the trailers.

In this *Erie* case, the law of Louisiana applies. A duty-risk analysis is the standard negligence analysis employed in determining whether to impose liability in Louisiana under LSA-C.C. art. 2315. *Lemann v. Essen Lane Daiquiris, Inc.*, 2005-1095 (La. 3/10/06), 923 So.2d 627, 633 (citing *Mathieu v. Imperial Toy Corporation*, 94-0952, p. 4 (La. 11/30/94), 646 So.2d 318, 321)). This analysis requires proof by the plaintiff of five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed

4

to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element), and (5) the actual damages (the damages element). *Id.* (citing *Fowler v. Roberts*, 556 So.2d 1, 4 (La. 1989), *reh'g granted on other grounds and original opinion reinstated as supplemented*, 556 So.2d at 13 (La. 1990)). A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. *Id.*

The threshold issue in any negligence action is whether the defendant owes a duty to the plaintiff. *Id.* Whether a duty is owed is a question of law. *Id.* The inquiry is whether the plaintiff has any law to support the claim that the defendant owed him a duty. *Id.*

In this case, in determining whether the defendant owed a duty to the plaintiff, the inquiry can be stated as follows: Does the defendant, the lessor of a trailer in which a crew of men sleep, owe a duty to one of those men to make sure that the trailer is spider free nine months after its rental and placement at the rig site? The answer to that question is self-evident. Simply stated, there is no law to support the claim that T.B. Rental owed Sharplin a duty nine months after delivery of the trailer to insure that it was spider-free.

As the lessor, T.B. Rental owed a duty to maintain the trailer in a condition suitable for the purpose for which it was leased. LSA-C.C. Art. 2692 (2004).[1] When the trailer at issue was delivered, it was clean and not infested with spiders or other insects. (rec. doc. 39, Exhibit B, ¶ 4; Exhibit E, p. 20). Once the trailer was delivered to H & P, its crew members were responsible for general maintenance of the trailer. (rec. doc. 39, Exhibit B, ¶ 5; Exhibit C, p. 16; Exhibit D, p. 16; Exhibit E, p. 18; Exhibit F, p. 11). This included spraying for insects. (rec. doc. 39, Exhibit E, p. 18; Exhibit F, p. 17).

The record reflects that the trailer at issue was delivered on or about June 9, 2003. The alleged spider bite occurred on March 29, 2004, nearly nine months later. According to the undisputed testimony, the trailer was clean and insect-free when it was delivered. Once the trailer was in H & P's custody, its crew assumed responsibility for keeping it clean and spraying for insects. In fact, employees of T.B. Rentals sprayed the trailer. [rec. doc. 44, Ex. F p. 17]. No complaint of spider infestation was ever made to T. B. Rental. [rec. doc. 39, Ex B ¶6].

The Court finds that T.B. Rental did not owe a duty to the plaintiff to keep the trailer spider free nine months after delivery of the trailer. *See Jackson v. McKean*,

---

[1] Article 2692 was in effect at the time of the incident at issue. Current article 2682 restates the substance of article 2692 with some cosmetic changes. *See* Revision Comments to Art. 2682–2004. These changes were not intended to change the law.

195 So. 622 (La. App. 2nd Cir. 1940) (evidence indicating that bedbugs were found on leased premises more than four months after the room had been used for storage purposes did not authorize recovery on reconventional demand for damages in lease dispute). Accordingly, the motion for summary judgment on the negligence claim under LSA-C.C. art. 2315 is **GRANTED**.

2. Strict Liability

The complaint does not assert a strict liability claim. However in plaintiffs' opposition to the motion for summary judgment, they cite former Civil Code Article 2695, which governs lessor liability for strict liability.[2] Defendants assert that even if plaintiffs had asserted claims based on premises liability, such claims would fail.

Article 2695, which was in effect at the time of the accident, provided as follows:[3]

---

[2]La. C.C. art. 2695 applies to the lease of both immovables and movables. LSA-R.S. 9:3309 ("[e]xcept as specifically provided in this Chapter [lease of movables], true leases are subject to Title IX of Book III of the Civil Code entitled "Of Lease" [C.C. Art. 2668 *et seq.*]); *Ford New Holland Credit Company v. McManus*, 36,567 (La.App. 2 Cir. 12/11/02); 833 So.2d 1130, 1133.

[3]Articles 2696 and 2697, effective January 1, 2005, restate the principles of former article 2695. *See* Revision Comments to LSA-C.C. articles 2696 and 2697– 2004. Louisiana courts have held that art. 2695 retained the concept of strict liability despite the passage of La. C.C. art. 2317.1, which eliminated the distinction between the strict liability and the negligence of the owner or custodian of property by requiring a showing of knowledge or constructive knowledge to impose liability. *Maiorana v. Melancon Metal Buildings, Inc.*, 05-933 (La.App. 5 Cir. 4/25/06); 927 So.2d 700, 704; *Barnes v. Riverwood Apartments Partnership*, 38,331 (La.App. 2 Cir. 4/7/04); 870 So.2d 490, 494.

> The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.

Here, T.B. Rental is not liable because no "vice" or "defect" as contemplated by Article 2695 existed. A defect, for purposes of Article 2695, has been defined as "a dangerous condition reasonably expected to cause injury to a prudent person using ordinary care under the circumstances." *Marien v. General Ins. Co. of America*, 2002-545, p. 4 (La.App. 3 Cir. 12/11/02); 836 So.2d 239, 243; *Martinez v. Coleman*, 00-1827, p. 7 (La.App. 5 Cir. 4/24/01); 786 So.2d 170, 173. The word "defect", however legally defined, implies an imperfection or deficiency which inheres with relative permanence in a thing as one of its qualities. *Toussant v. Guice*, 414 So.2d 850, 852 (La.App. 4 Cir.1982).

In *Karu v. Lavergne*, 255 So.2d 483 (La. App. 1st Cir. 1971), the court expounded on the definition of defect under art. 2695. There, the plaintiff, Karu, sued his landlord for injuries sustained when he was attacked by two German shepherd dogs belonging to another tenant at his apartment complex. One of his claims was that the lessor and it's insurer were liable for his damages under art. 2695. The court

rejected this argument, finding that the dogs were not "defects" in the thing leased. In so holding, the court reasoned as follows:

> To hold that dogs, on the grounds of the building in which Karu rented an apartment, were defects of the thing leased would involve extending Article 2695 far beyond an intention of the redactors of the Revised Civil Code. . . . Reading C.C. Articles 2692-2700 together, one is faced with the obvious intention of the code redactors to address themselves to the Physical defects of the thing leased.

*Id*. at 485.

Similarly, in *Bradford v. Louisiana Downs, Inc.*, 24065 (La.App. 2 Cir. 10/28/92); 606 So.2d 1370, 1376, which involved a strict liability claim under Article 2317, the court found that a snake, which bit a patron at a racetrack parking lot, did not constitute a "vice or defect" in the lot. The court reasoned that "[a] defect is a flaw or condition existing in the thing itself," and held that the snake did not meet this definition of defect. *Id*. Based on the foregoing authorities, the Court finds that the alleged spider was not a vice or defect in the trailer.

Additionally, the Court finds that article 2695 does not apply because Sharplin was not the lessee of the trailer. Sharplin argues that this article applies to invitees as well as lessees. However, Louisiana courts have consistently held that article 2695 is restricted to the lessor-lessee relationship and does not apply to third parties.

*Weiland v. King,* 281 So.2d 688, 690 (La. 1973); *Maiorana*, 927 So.2d at 704; *Johnson v. Lull Enterprises, Inc.*, 92-18, p. 5 (La.App. 3 Cir. 10/11/95); 663 So.2d 403, 408; *Reed v. Ramsay,* 355 So.2d 618, 619 (La.App. 4th Cir. 1978). Thus, T.B. Rentals is not strictly liable in this case.

## Conclusion

Based on the foregoing reasons, the Motion for Summary Judgment is hereby **GRANTED,** and all claims asserted against defendants are **DISMISSED WITH PREJUDICE.**

Signed this 24th day of August, 2006, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE